**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

EVAN EVANGELOU                     :
                                   :
           Plaintiff,          :          Civil Action No.:      11-531 (RC)
                                   :
           v.                  :
                                   :
DISTRICT OF COLUMBIA, et al.       :
                                   :
           Defendants.         :


**MEMORANDUM OPINION**

      Evan Evangelou brought this suit against the District of Columbia and its chief of police,

alleging that his constitutional rights were violated when he was fired by the Metropolitan Police

Department.  The defendants have moved to dismiss the complaint for failure to state a claim

upon which relief can be granted.  Their motion will be mostly denied.

**I.  BACKGROUND**

      In his complaint, Evan Evangelou alleges that he was hired by the District of Columbia's

Metropolitan Police Department ("MPD" or "police department") to be a police officer in

September 2008.  Am. Compl. ¶ 5.  For the first eighteen months, his employment was

probationary.  *Id.*  During that probationary period, another officer accused Mr. Evangelou of

extortion.  *Id.* ¶ 6.[1]  Mr. Evangelou had his police power suspended, his badge and pistol

confiscated, and he was assigned to mind a desk at the Police Boys and Girls Club.  *Id.* ¶ 7.

      After the accusation, Mr. Evangelou was contacted by a detective from the internal

affairs division of the police department.  *Id.* ¶ 8.  The detective said that he was conducting a

criminal investigation into the allegations against Mr. Evangelou, and that anything Mr.

---

[1]  Mr. Evangelou maintains that this accusation was false.  Am. Compl. ¶ 6.

Evangelou said could be used against him in a criminal proceeding.  *Id.*  Relying on his constitutional right against self-incrimination, Mr. Evangelou refused to answer the detective's questions.  *Id.*  His lawyer then contacted the detective to confirm that Mr. Evangelou was invoking his Fifth Amendment rights and would not agree to be interviewed.  *Id.* ¶ 9.  Mr. Evangelou heard nothing more about the criminal investigation.  *Id.*

In March 2010, two weeks before the end of Mr. Evangelou's probationary period, he received a letter from Cathy Lanier, the chief of police at the MPD.  *Id.* ¶ 11.  The letter from Chief Lanier terminated Mr. Evangelou's employment without explanation, effective several days later.  *Id.*  Mr. Evangelou alleges that Chief Lanier decided to fire him because he asserted his constitutional right against self-incrimination, refusing to answer questions about the allegations of extortion unless he was assured that any information he provided would not be used to prosecute him.  *Id.*  ¶ 13.

After giving notice to the Mayor of the District of Columbia, *id.* ¶ 14, Mr. Evangelou filed this suit against the District and Chief Lanier, in both her official and her individual capacities.  He claims that the defendants are liable under 42 U.S.C. § 1983 for violating his Fifth Amendment right against self-incrimination, *id.* ¶¶ 15–22, as well as his right to due process of law before being permanently defamed or stigmatized as unsuitable for employment, *id.* ¶¶ 23–29.  Mr. Evangelou also alleges that the defendants violated D.C. Code § 5-105.04 by failing to give him advance written notification of the reasons for his termination.  *Id.* ¶¶ 30–36. The defendants have moved to dismiss the entire complaint for failure to state a claim on which relief can be granted.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Such motions allege that a plaintiff has not properly stated a claim; they do not test a plaintiff's ultimate likelihood of success on the merits.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint is only required to set forth a short and plain statement of the claim, in order to give the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court considering this type of motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), or to plead law or match facts to every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal citations omitted).  Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

3

The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.  ANALYSIS

Section 1983 provides a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the    deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991)).  As a municipal corporation, the District is a "person" within the meaning of the statute and is therefore subject to liability "when an official policy or custom causes [a] complainant to suffer a deprivation of constitutional" or other federal right.  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986); *accord Warren*, 353 F.3d at 38.

Mr. Evangelou alleges that, in firing him, Chief Lanier and the District violated two of his constitutional rights: the right against self-incrimination, *see, e.g.*, *Gardner v. Broderick*, 392 U.S. 273, 278–79 (1968), and the right to due process of law before being permanently defamed as unsuitable for employment or stigmatized in a way that seriously affects one's ability to pursue his chosen profession, *see O'Donnell v. Barry*, 148 F.3d 1126, 1139–41 (D.C. Cir. 1998). He requests both damages and injunctive relief.  In his complaint, Mr. Evangelou also asserted a

separate claim for the defendants' alleged violation of D.C. Code § 5-105.04, but on this motion

he has conceded that that claim should be dismissed, *see* Memo. in Opp. to Defs.'s Mot. to

Dismiss at 5, and so it will be.  The court proceeds to consider the defendants' arguments that the

claims for constitutional violations should also be dismissed.

### A.  Self-Incrimination

Mr. Evangelou first alleges that Chief Lanier and the District fired him for asserting his

Fifth Amendment right against self-incrimination.  *See* Am. Compl. ¶ 19.  The defendants argue

that Mr. Evangelou's claim should be dismissed because it fails to properly allege a violation of

the constitutional right.  The District goes on to argue that the complaint does not satisfy the

*Monell* standard for municipal liability, and that the suit against Chief Lanier in her official

capacity is redundant.  Chief Lanier also maintains that, in her individual capacity, she is entitled

to qualified immunity.  The court turns first to the adequacy of the constitutional violation

alleged.

### i.  Constitutional Violation

"Like other individuals, government employees enjoy the protection of the privilege

against self-incrimination. Yet the government, like private employers, needs to ensure that its

employees are faithfully performing their duties. The government therefore may fire employees

who refuse, on the basis of their Fifth Amendment privilege, to answer questions concerning the

performance of their duties, *so long as the employees' answers could not be used against them in

a criminal prosecution*."  *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 291 (D.C.

Cir. 1993) (emphasis added) (citing *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*,

392 U.S. 280, 284–85 (1968); *Gardner*, 392 U.S. at 278–79; *Garrity v. New Jersey*, 385 U.S. 493

(1967)); *accord Chavez v. Martinez*, 538 U.S. 760, 768 (2003) (Thomas, J.) (noting that

"governments may penalize public employees and government contractors (with the loss of their jobs or government contracts) to induce them to respond to inquiries, *so long as the answers elicited* (and their fruits) *are immunized from use in any criminal case against the speaker*") (emphasis added) (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *Lefkowitz v. Turley*, 414 U.S. 70, 84–85 (1973)).  Public employees and government contractors cannot, however, constitutionally be given the "Hobson's choice between self-incrimination and forfeiting [their] means of livelihood."  *Gardner*, 392 U.S. at 277.  "[T]he state must," therefore, "decide whether to demand a statement from an employee [or contractor] on job-related matters, in which case it may not use the statement in a criminal prosecution."  *United States v. Vangates*, 287 F.3d 1315, 1321 (11th Cir. 2002).  What the government cannot do is both demand a potentially self-incriminating statement and reserve the right to use that statement in a later criminal proceeding.  *See Atwell v. Lisle Park Dist.*, 286 F.3d 987, 990 (7th Cir. 2002) (Posner, J.) ("The government is not allowed to force a person to make a statement, even out of court, that might be used as evidence that he had committed a crime."); *Gulden v. McCorkle*, 680 F.2d 1070, 1074 (5th Cir. 1982) (observing that "it is the compelled answer *in combination with* the compelled waiver of immunity that creates the Hobson's choice for the employee").

Several consequences flow from this limit on government power.  First, if the government chooses to demand an answer from its employee, then that answer is immunized automatically.  *Aguilera v. Baca*, 510 F.3d 1161, 1172 n.5 (9th Cir. 2007) ("If compelled, [to answer questions in the course of an internal affairs investigation,] the [police] officers *automatically* would be entitled to immunity for any incriminating statements that they made." (emphasis added) (citing *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984)); *accord Sher v. Dep't of Veterans Affairs*, 488 F.3d 489, 502 n.12 (1st Cir. 2007) (noting the "considerable amounts of

6

persuasive authority from other circuits on this issue").  Because of that automatic immunity, an employee can be fired on the basis of either her answer or her refusal to give an answer when required to do so, even if the answer would be self-incriminating.  *United States v. Friedrick*, 842 F.2d 382, 394–95 (D.C. Cir. 1988).  But if the government does not demand an answer to its questions, then no automatic immunity protects the employee's answers.  *See, e.g.*, *Aguilera*, 510 F.3d at 1177 (Kozinski, C.J., dissenting on other grounds) (explaining that "if plaintiffs weren't *compelled* to make self-incriminating statements, they didn't automatically have immunity").  Because answers freely given are not immune from use in criminal proceedings, the government cannot punish its employee for refusing to provide such answers when they could be self-incriminating: "no 'penalty' may ever be imposed on someone who exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'"  *Chavez*, 538 U.S. at 768–69 (Thomas, J.) (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965)); *id.* at 768 n.2 (noting that "States cannot condition public employment on the waiver of constitutional rights" (citing *Lefkowitz*, 414 U.S. at 85)); *accord Aguilera*, 510 F.3d at 1172 n.5 ("If [the police officers being investigated were] not under compulsion [to answer questions], . . . then they had the constitutional right to remain silent without fear of punishment."); *id.* at 1177 (Kozinski, C.J., dissenting on other grounds) (concluding that if the officers being investigated "had no immunity, they were constitutionally entitled to remain silent").

Mr. Evangelou argues that he was not compelled to make a statement regarding the extortion accusation.  The defendants agree.[2]  Moreover, that fact is clearly implied by the

---

[2]  Because the parties agree that no statement was compelled, they have not argued—and the court need not decide—whether questions about the allegations of extortion would have been "potentially incriminating questions *concerning [Mr. Evangelou's] official duties*," *Lefkowitz*, 538 U.S. at 768 (emphasis added), and, if not, whether the defendants could have compelled answers from Mr. Evangelou.  (The question may turn on whether the extortion was alleged to

allegations in the complaint. As reviewed above, the government may *either* demand a self-incriminating statement *or* withhold immunity for the use of the statement in a criminal proceeding—but not both. The complaint alleges that the internal affairs detective told Mr. Evangelou that anything he said could be used against him in a criminal prosecution. Am. Compl. ¶ 8. Because the detective withheld immunity from Mr. Evangelou, it follows that he was not demanding answers to his questions, and therefore that the government could not punish Mr. Evangelou for refusing to provide potentially self-incriminating information. *Nat'l Fed'n of Fed. Employees*, 983 F.2d at 291–92. Mr. Evangelou alleges that the District and Chief Lanier did just that, firing him for exercising his Fifth Amendment rights.

The defendants make five unavailing arguments that the claim should nonetheless be dismissed for failure to allege a constitutional violation. In their first three arguments, the defendants note that Mr. Evangelou made no statement regarding the accusation of extortion, that he therefore was not compelled to make any such statement, and that no improperly compelled statement was used against him. But those facts do not defeat his claim, because the Fifth Amendment is violated when the federal government punishes an employee for refusing to provide potentially self-incriminating information that would be admissible in a criminal proceeding—as Mr. Evangelou alleges he was told that his statements would be. *See Lefkowitz*, 431 U.S. at 806. Fourth, the defendants argue that Mr. Evangelou had no reason to think that his job would be placed in additional jeopardy if he answered the detective's questions, since he was

---

have occurred in connection with Mr. Evangelou's duties as a police officer, which is not clear from his complaint.) Even if the defendants could have compelled answers about matters unrelated to official duties, however, they could not have compelled those answers without immunizing them, nor punished Mr. Evangelou for remaining silent in the absence of immunity. *See Hanover Township Fed'n of Teachers v. Hanover*, 457 F.2d 456, 460 (7th Cir. 1972) (Stevens, J.) (Public employees are also "protected against discharge in retaliation against the exercise of" their "right to claim the privilege against self-incrimination when questioned about matters *unrelated* to the performance of [their] official duties.") (emphasis added).

already a probationary employee.  That the argument ignores the realities of the workplace—of course an at-will employee places his job in additional jeopardy when he confesses a crime to his employer—is beside the point.  The right against self-incrimination does not concern Mr. Evangelou's job security—indeed, that right is not violated when a government employee is forced to make statements that lead to his firing.  *See Nat'l Fed'n of Fed. Employees*, 983 F.2d at 291.  What the right against self-incrimination protects is Mr. Evangelou's dignity as a citizen. *Miranda v. Arizona*, 384 U.S. 436, 460 (1966) ("[T]he constitutional foundation underlying the privilege [against self-incrimination] is the respect a government—state or federal—must accord to the dignity and integrity of its citizens."); *see also United States v. Mandujano*, 425 U.S. 564, 590 (1976) (Brennan, J., concurring) (discussing "the fundamental restraints which guarantee our liberty, including the Fifth Amendment privilege against self-incrimination").  Finally, the defendants argue that because Mr. Evangelou was a probationary employee and therefore had no property right in his continued employment, he could be fired for refusing to incriminate himself. That is not the law.  Here, as in many contexts, the government is barred from acting on the basis of an unconstitutional motive, even if it could have taken the same action for countless licit reasons—or for no reason at all.  *Cf. Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) (noting that although "the First Amendment does not create property or tenure rights" it nonetheless "protects government employees from termination *because of* their speech on matters of public concern"); *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (setting out four-factor test for claims of unconstitutional retaliation against government employees for exercising their First Amendment rights; property interest in employment not among the factors).

Although the defendants could have fired Mr. Evangelou for many reasons and, perhaps, without

any kind of process, they could not fire him in violation of his constitutional rights.[3]

### ii. Municipal Liability

The court turns to the District of Columbia's argument that Mr. Evangelou has not

alleged facts sufficient to impose liability on the District or—what amounts to the same thing—

on Chief Lanier in her official capacity.[4]  It is axiomatic that "a municipality cannot be held

liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be liable

under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

690 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

---

[3]  The defendants raise two additional arguments for the first time in their reply brief: that the right against self-incrimination can only be invoked in the course of a "proceeding," which the internal affairs investigation supposedly was not, and that Mr. Evangelou could be fired for asserting his Fifth Amendment rights if he asserted them improperly as "a general excuse for refusing to appear" and not "in connection with precise questions."  *Landy v. United States*, 283 F.2d 303, 304 (5th Cir. 1960) (per curiam).  The court will not consider those arguments on this motion.  *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008); *Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (both refusing to consider arguments first raised in a reply brief).  However, Mr. Evangelou will ultimately bear the burden of proving that his Fifth Amendment rights were violated, and a public employee being questioned about official duties "has no right to skip the interview merely because he has reason to think he'll be asked questions the answers to which might be incriminating."  *Atwell*, 286 F.3d at 991.

[4]  "A suit against an individual in her official capacity is one method of bringing suit against the employer and is distinct from an individual capacity suit.  Where the suit has been filed against the employer (here the District of Columbia) *and* one or more employees [in their official capacities], however, the claims against the employees *merge* with the claim against the employer."  *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997).  "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals in their official capacity as 'redundant and an inefficient use of judicial resources.'"  *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) (quoting *Cooke-Seals*, 973 F. Supp. at 187; citing many cases).  This court will therefore do the same, dismissing the claims against Chief Lanier in her official capacity as identical to and therefore duplicative of the claims against the District itself.

inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  "The

'official policy' requirement was intended to distinguish acts of the *municipality* from acts of

*employees* of the municipality, and thereby make clear that municipal liability is limited to

actions for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475

U.S. 469, 479–80 (1986).

       To impose liability on a municipality, the plaintiff must allege—and, ultimately, must

prove—the existence of a municipal custom or practice that abridged his federal constitutional or

statutory rights.  *See Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000).  A

plaintiff can satisfy this burden in any of four ways.  First, a plaintiff can show that "the

municipality or one of its policymakers explicitly adopted the policy that was 'the moving force

of the constitutional [or other federal] violation.'"  *Warren*, 353 F.3d at 39 (quoting *Monell*, 436

U.S. at 694).  A plaintiff can also demonstrate that "a policymaker 'knowingly ignore[d] a

practice that was consistent enough to constitute custom.'"  *Jones v. Horne*, 634 F.3d 588, 601

(D.C. Cir. 2011) (quoting *Warren*, 353 F.3d at 39).  Next, a plaintiff can establish that the

municipality "failed to respond to a need . . . in such a manner as to show 'deliberate

indifference' to the risk that not addressing the need will result in constitutional [or other federal]

violations."  *Id.* (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

Finally, a plaintiff can prove that federal law was violated by a direct act of the policymaker.  *See*

*Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 418 (1997) (reasoning that where a policymaker is

the responsible party, "the choice of policy and its implementation are one, and the first or only

action will suffice to ground municipal liability simply because it is the very policymaker who is

acting" (citing *Pembaur*, 475 U.S. at 480–81)); *Baker*, 326 F.3d at 1306 (equating "the action of

a policy maker within the government" with official government policy (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988))).

Mr. Evangelou alleges that "Chief Lanier decided to terminate [him] as a result of his having asserted his Fifth Amendment right against self-incrimination."  Am. Compl. ¶ 13.  He also alleges that Chief Lanier was a "final policy making official" for the District, *id.* ¶ 21, and therefore concludes that his constitutional rights were violated pursuant to official District policy.  The District makes several fruitless arguments in response, most of which amount to the claim that Mr. Evangelou must allege that he was fired pursuant to some general policy or custom.  Not so: "the action of a policy maker within the government" is enough to establish a municipal policy.  *Baker*, 326 F.3d at 1306.  "It does not matter that the policymaker may have chosen 'a course of action tailored [only] to a particular situation and not intended to control decisions in later situations'; if the decision to adopt that particular course of action is intentionally made by the authorized policymaker, 'it surely represents an act of official government "policy"' and 'the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.'"  *Bd. of Cnty. Com'rs*, 520 U.S. at 418 (quoting *Pembaur*, 475 U.S. at 481) (alteration in original).  Nor does it matter, as the District also argues, that the detective who attempted to question Mr. Evangelou was not himself a policymaker.  The alleged constitutional violation occurred when Chief Lanier fired Mr. Evangelou, not when the detective questioned him.

### iii.  Qualified Immunity

Finally, Chief Lanier argues that the claims brought against her in her individual capacity should be dismissed on the basis of qualified immunity.  The doctrine of qualified immunity

protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A right is "clearly established" if it is sufficiently clear that a reasonable official would understand that what she is doing violates that right.  *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999).

To determine whether a reasonable official should have known that her actions violated rights conferred by federal law, the D.C. Circuit will "look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view."  *Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008).  Officials are presumed to have reasonable knowledge of all developments in constitutional law at the time the alleged violation occurred.  *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991).  "[They] can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Accordingly, an official may have fair warning that her conduct deprived the victim of a constitutional right even if there existed at the time no case with materially similar facts.  *Id.* at 739.

Mr. Evangelou rightly contends that the constitutional right of a government employee being questioned by his employer to either assert his Fifth Amendment right against self-incrimination or else receive immunity from the use of his answers in a criminal proceeding has been clearly established since 1968.  *See Uniformed Sanitation Men*, 392 U.S. at 284–85; *Gardner*, 392 U.S. at 278–79; *Garrity*, 385 U.S. at 493.  Chief Lanier offers two responses: first,

that it does not violate any clearly established constitutional right to sign a letter of termination, and second, that Mr. Evangelou has not alleged enough facts to support a claim that Chief Lanier did anything more than that.  The first argument is easily set aside: as discussed above, Mr. Evangelou alleges, upon information and belief, that Chief Lanier signed the letter for unconstitutional reasons.  It was those reasons and not the mere signature that allegedly violated his constitutional rights.

As for Chief Lanier's second argument, that a "plea of salient allegations solely on information and belief" is insufficient after *Iqbal* and *Twombly*, Memo. in Supp. of Defs.' Mot. to Dismiss at 11 (internal quotation marks omitted), "[t]he *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 556 U.S. at 684, does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations altered and omitted); *accord Kvech v. Holder*, 2011 WL 4369452, at *3 n.7 (D.D.C. Sept. 19, 2011).  Mr. Evangelou alleges the following facts: that he was an exemplary officer who had demonstrated his qualifications and suitability for permanent employment, Am. Compl. ¶ 11, that he was falsely accused of extortion, *id.* ¶ 6, suspended as a result of the accusation, *id.* ¶ 7, contacted by an internal affairs investigator conducting a criminal investigation, with whom he refused to cooperate on Fifth Amendment grounds, *id.* ¶¶ 8–9, never again informed about the progress of that investigation, *id.* ¶ 9, and fired by Chief Lanier without explanation, *id.* ¶ 10.  From these factual allegations he infers that, upon information and belief, Chief Lanier decided to fire him because he asserted his Fifth Amendment rights and refused to answer the investigator's questions.  *Id.* ¶ 13.  Chief Lanier asserts that this inference

14

is impermissibly implausible, but does not explain why.  The court can imagine many plausible and perfectly legal explanations for Chief Lanier's conduct, but *Twombly* and *Iqbal* do not require an inference of culpability to be the only inference that could be drawn—only that it be among the set of plausible inferences.  Mr. Evangelou has met that relatively low standard.  To be fired without explanation after performing in an exemplary manner, then refusing to answer questions about a false accusation, gives rise to a plausible inference that the refusal was the reason for the firing.  No more is needed at this stage.  The defendants' motion to dismiss the claim based on a violation of Mr. Evangelou's right against self-incrimination will be denied.

### B.  Due Process

Mr. Evangelou also alleges that, as a result of his termination, he "has been wrongly and unjustifiably stigmatized as being both unsuitable and unqualified for employment as a police officer."  Am. Compl. ¶ 26.  In support of that allegation, he points to a District of Columbia regulation providing that, as relevant here, "an agency shall terminate an employee during the probationary period whenever his or her work performance or conduct fails to demonstrate his or her suitability and qualifications for continued employment."  6-B D.C. Mun. Regs. § 814.1.  He also adduces D.C. Code § 5-105.04, under which whenever "the conduct or capacity of the [probationary employee] is determined by the Mayor of the District of Columbia, or his designated agent, to be unsatisfactory, the [probationary employee] shall be separated from the service after advance written notification of the reasons for and the effective date of the separation."  Mr. Evangelou suggests that the municipal regulation implies that fired probationary employees are necessarily unsuitable or unqualified for their former positions,[5] and

---

[5]  In *Piroglu v. Coleman*, the D.C. Circuit interpreted a similar municipal regulation, which provided that "a probationary employee may be terminated before completing his probationary period if he 'fails to demonstrate that he . . . possesses the skill and character traits necessary for

that he has been further stigmatized by being denied the written explanation which he claims that he was due.  In response, the defendants argue only that the D.C. Code § 5-105.04 does not apply to probationary police officers.  The defendants are correct, *see* D.C. CODE § 1-632.03(a)(1)(D), but that fact does not defeat Mr. Evangelou's claim.

Under the precedents of the Supreme Court and the D.C. Circuit, a government employee's due process rights are implicated when a firing or demotion is coupled with a defamatory official statement, *see Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983), or when an adverse employment action (considered somewhat more broadly) is combined with "a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities," *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  The first case is known as a "reputation-plus" claim; "it presumably rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired."  *Id.*; *see also Paul v. Davis*, 424 U.S. 693, 710 (1976) (reading *Roth* to hold that "defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation," but not to suggest that "a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable" as a due process violation).  The second case goes by the name of "stigma or disability," because "it does not depend on official speech, but on a

---

satisfactory performance.'"  25 F.3d 1098, 1104 (D.C. Cir. 1994) (quoting District Personnel Manual, Ch. 8, Subpart 6.3(H)(1)).  The Circuit rejected the argument "that under the regulation the District can terminate [a probationary employee's] employment *only* if it determines that she lacks necessary skill and character traits," ruling instead that although "[t]he regulation . . . sets out certain circumstances in which a probationary employee may be terminated," "it does not limit the District's discretionary right to otherwise terminate him."  *Id.*  Although *Piroglu* turned on the question of whether the employee had a property right in her job, which is not an issue in this case, its logic would suggest that the mere fact of Mr. Evangelou's firing does not imply an official determination that "his . . . work performance or conduct fail[ed] to demonstrate his . . . suitability and qualifications for continued employment."  6-B D.C. Mun. Regs. § 814.1.

continuing stigma or disability arising from official action." *O'Donnell*, 148 F.3d at 1140.  A plaintiff may not "sue purely on the basis of the stigma associated with being fired; the Court found in *Paul v. Davis*, 424 U.S. 693 (1976), that stigma alone is not actionable, without a showing that a 'right or status previously recognized by state law' has been 'distinctly altered or extinguished.'"  *Id.* at 1139 (quoting *Paul*, 424 U.S. at 711).

In his opposition to this motion, Mr. Evangelou appears to conflate these two claims, arguing that his firing damaged his reputation by stigmatizing him as unsuitable for employment as a police officer.  He does not clearly identify either a defamatory official statement made in conjunction with his firing[6] or the distinct alteration or extinguishment of a right or status previously recognized by District law.  To succeed on the merits of his claim, he will need to prove one or the other.  But the fact that Mr. Evangelou was not, as he alleged in his complaint, entitled to "advance written notification of the reasons for . . . the separation" from the police department, D.C. CODE § 5-105.04, does not defeat either theory of liability—and the defendants offer no other argument against it.  Their motion to dismiss the claim based on a violation of Mr. Evangelou's Fifth Amendment right to due process will therefore be denied.[7]

---

[6]   To the extent that he relies on the municipal regulation about the firing of probationary employees to imply such a statement, that reliance appears tenuous.  *See supra*, note 5.

[7]   The District and Chief Lanier also move to dismiss Mr. Evangelou's claim for injunctive relief based upon the alleged violations of his constitutional rights.  In support of their motion, the defendants only repeat their argument that Mr. Evangelou has not properly alleged municipal liability—an argument that would not defeat the claim against Chief Lanier in her individual capacity, and one which has already been analyzed and rejected.

### IV.  CONCLUSION

For the reasons stated above, the defendants' motion will be granted in part and denied in part.  The claims brought against Chief Lanier in her official capacity will be dismissed as duplicative of the identical claims brought against the District, and the claims for violations of D.C. Code § 5-105.04 will be dismissed as conceded.  All other claims survive the defendants' motion, which will otherwise be denied.

Rudolph Contreras
United States District Judge

Date: November 5, 2012